# United States Court of Appeals

## *for the*

# Federal Circuit

ROBERT MANKES,

*Plaintiff-Appellant,*

– v. –

VIVID SEATS LTD., FANDANGO, LLC,

*Defendants-Appellees.*

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA IN CASE NOS. 5:13-CV-00717-FL AND 5:13-CV-00716-FL, JUDGE LOUISE WOOD FLANAGAN

## BRIEF FOR DEFENDANT-APPELLEE VIVID SEATS LTD.

JOSEPH R. POPE
WILLIAMS MULLEN
A PROFESSIONAL CORPORATION
200 South 10th Street
Richmond, Virginia 23218
(804) 420-6000

RICHARD T. MATTHEWS
WILLIAMS MULLEN
A PROFESSIONAL CORPORATION
301 Fayetteville Street,
Suite 1700
Raleigh, North Carolina 27601
(919) 981-4000

*Attorneys for Defendant-Appellee Vivid Seats Ltd.*

August 3, 2015

# CERTIFICATE OF INTEREST

Counsel for Appellee, Richard T. Matthews, certifies the following:

1.  The full name of the party represented by me in the case is Vivid Seats Ltd.

2.  The name of the real party in interest represented by me is Vivid Seats Ltd.

3.  Vivid Seats Ltd. is not owned by any parent corporation and no publically held corporation owns 10% or more of its stock.

4.  The names of the law firms, partners and associates that have appeared for Vivid Seats Ltd. in the lower tribunal and/or are expected to appear for the party in this court are:

    Richard T. Matthews
    WILLIAMS MULLEN
    A PROFESSIONAL CORPORATION
    301 Fayetteville St., Ste. 1700
    Raleigh, NC 27601


    Joseph R. Pope
    WILLIAMS MULLEN
    A PROFESSIONAL CORPORATION
    200 South 10th Street
    Richmond, Virginia 23218

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF CONTENTS.................................................................. ii

TABLE OF AUTHORITIES ..............................................................iv

STATEMENT OF RELATED CASES ............................................ viii

INTRODUCTION ...............................................................................1

STATEMENT OF THE ISSUES..........................................................2

STATEMENT OF THE CASE...............................................................3

SUMMARY OF THE ARGUMENT ....................................................7

STANDARD OF REVIEW ..................................................................9

ARGUMENT .....................................................................................10

I.    Mankes Failed to Preserve Any Claim for Direct Infringement
      Under § 271(a) ..........................................................................10

II.   Mandatory Precedent of this Circuit Makes Clear that § 271(a) Does
      Not Reach Claims of Joint Infringement.......................................12

      A.    The "Single Entity" Rule As Explained By *Akamai II* and
            *Muniauction* Is Grounded in the Text of § 271(a) and
            Supreme Court Doctrine and Requires Dismissal of Mankes'
            Claims...................................................................................13

      B.    No Intervening Decision of this Court Sitting *En Banc* or the
            Supreme Court Has Called This Court's Rulings in *Akamai II*
            and *Muniauction* into Question ...........................................16

III.  The Single-Entity Rule Articulated By *Muniauction* and *Akamai II*
      Is Correct...................................................................................18

      A.    Allowing Joint-Tortfeasor Based Liability Is Inconsistent
            With the Statutory Framework for Patent Infringement ....................19

      B.    Incorporating Joint-Tortfeasor Concepts Into § 271(a) Will
            Render § 271(b) and (c) Superfluous ..................................21

C.    Important Common Law Safeguards to Joint-Tortfeasor
        Liability Cannot Operate Within § 271(a) ..........................................24

    1.    At common law, innocent actors who coordinate to
            cause harm are not subject to liability .....................................25

    2.    Under the common law, no liability can attach in the
            absence of a mutual agreement ..................................................26

    3.    No liability can attach in the absence of knowledge of
            harm...........................................................................................26

D.    Mankes' Reading of the Term "Whoever" Does Not Support
        His Interpretation of § 271(a)............................................................28

E.    Expanding § 271(a) to Reach Joint Action Will Restrain
        Innovation and Productive Enterprise .................................................29

F.    Better Claim Drafting Is the Proper Solution, Not Judicial
        Revision of the Patent Laws...............................................................31

CONCLUSION .....................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
    786 F.3d 899 (Fed. Cir. 2015) ...............................................................*passim*

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    134 S. Ct. 2723 (2014)...................................................................................6

*Am. Broad. Companies, Inc. v. Aereo, Inc.*,
    No. 12-cv-1540, 2014 WL 5393867 (S.D.N.Y. Oct. 23, 2014) .............. 17-18

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    365 U.S. 336 (1961)....................................................................................13

*Astoria Fed. Sav. & Loan Assn. v. Solimino*,
    501 U.S. 104 (1991)....................................................................................28

*Barclay v. United States*,
    443 F.3d 1368 (Fed. Cir. 2006) ..................................................................17

*Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*,
    262 F. App'x 556 (4th Cir. 2008)................................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................11

*Blankenship v. Manchin*,
    471 F.3d 523 (4th Cir. 2006) ......................................................................10

*BMC Resources, Inc. v. Paymentech, L.P.*,
    498 F.3d 1373 (Fed. Cir. 2007) .......................................................15, 31, 32

*Burnet v. Coronado Oil & Gas Co.*,
    285 U.S. 393 (1932)....................................................................................17

*Butler v. United States*,
    702 F.3d 749 (4th Cir. 2012) ........................................................................9

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)...............................................................................19, 20

*Corley v. United States*,
    556 U.S. 303 (2009)....................................................................................21

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
    261 U.S. 24 (1923) ..................................................................................13

*Dawson Chem. Co. v. Rohm & Haas Co.*,
    448 U.S. 176 (1980) ................................................................................20

*Deepsouth Packing Co. v. Laitram Corp.*,
    406 U.S. 518 (1972) ..........................................................................13, 14

*Drager v. PLIVA USA, Inc.*,
    741 F.3d 470 (4th Cir. 2014) ...................................................................9

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) .................................................................10

*Eon-Net LP v. Flagstar Bancorp.*,
    653 F.3d 1314 (Fed. Cir. 2011) .............................................................30

*Fromson v. Advance Offset Plate, Inc.*,
    720 F.2d 1565 (Fed. Cir. 1983) .............................................................14

*GeorgiaCarry.Org, Inc. v. Georgia*,
    687 F.3d 1244 (11th Cir. 2012) ..................................................7, 10, 12

*Gilmour v. Gates, McDonald & Co.*,
    382 F.3d 1312 (11th Cir. 2004) .............................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ..........................................................20, 21, 22, 27

*Hall v. Sec'y of Health & Human Servs.*,
    640 F.3d 1351 (Fed. Cir. 2011) ...............................................................8

*Hibbs v. Winn*,
    542 U.S. 88 (2004) ..................................................................................21

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,
    439 F.3d 1286 (11th Cir. 2006) .............................................................10

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) .............................................................11

*In re Sokolowski*,
    205 F.3d 532 (2d Cir. 2000) ...................................................................17

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    ___ U.S. ___, 131 S. Ct. 2296 (2011) ..............................................19-20

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) ........................................................14

*Laperriere v. Vesta Ins. Grp., Inc.*,
    526 F.3d 715 (11th Cir. 2008) ....................................................14

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
    ___ U.S. ___, 134 S. Ct. 2111 (2014) ....................................*passim*

*Massey v. Ojaniit*,
    759 F.3d 343 (4th Cir. 2014) ........................................................9

*Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.*,
    482 F.3d 1317 (Fed. Cir. 2007) ....................................................9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)....................................................................30

*Meyer v. Holley*,
    537 U.S. 280 (2003)....................................................................15

*Monticello Sch. Dist. No. 25 v. George L., on Behalf of Brock L.*,
    102 F.3d 895 (7th Cir. 1996) .................................................. 10-11

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) ..........................................*passim*

*Rangel v. United States*,
    155 F. Supp. 2d 949 (N.D. Ill. 2001)..........................................18

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*,
    476 U.S. 409 (1986)....................................................................17

*State Indus. Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985) ..................................................32

*Taylor v. Vt. Dep't of Educ.*,
    313 F.3d 768 (2d Cir. 2002) ..........................................................9

*TiVo Inc. v. EchoStar Corp.*,
    646 F.3d 869 (Fed. Cir. 2014) ....................................................25

*United States v. Texas*,
    507 U.S. 529 (1993)....................................................................28

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ........................................................10

*Zachair*, *Ltd. v. Driggs*,
    965 F. Supp. 741 (D. Md. 1997)....................................................................10


**Statutes & Other Authorities:**

1 U.S.C. § 1 ..........................................................................................................28

35 U.S.C. § 271 ...............................................................................................*passim*

35 U.S.C. § 271(a) ..........................................................................................*passim*

35 U.S.C. § 271(b) ..........................................................................................*passim*

35 U.S.C. § 271(c) ..........................................................................................*passim*

Fed. R. Civ. P. 12(c)........................................................................................6, 9

Fed. R. Civ. P. 15(a)........................................................................................10

Restatement (Second) of Torts § 875 cmt. a (1979)...............................................25

Restatement (Second) of Torts § 875 cmt. c (1979)...............................................25

Restatement (Second) of Torts § 876 (1979)....................................................26, 27

Restatement (Second) of Torts § 876(b), (c) (1979)...............................................24

Restatement (Second) of Torts § 876 cmt. a. (1979)...............................................26

Contributory Infringement in Patents—Definition of Invention: Hearings
    on H.R. 5988, 4061, and 5248 Before the Subcomm. on Patents,
    Trademarks, and Copyrights of the H. Comm. on the Judiciary,
    80th Cong. 12 (1948)....................................................................................27

Giles Rich, *Infringement Under Section 271 Of The Patent Act Of 1952*,
    35 J. Pat. Off. Soc'y 476 (1953)..................................................................20

Mark A. Lemley *et al.*, *Divided Infringement Claims*,
    AIPLA Q.J. 255 (2005) ................................................................................32

Siddharth Khanijou, *Patent Inequity?*: *Rethinking the Application of Strict
    Liability to Patent Law in the Nanotechnology Era*,
    12 J. Tech. L. & Pol'y 179 (2007)................................................................29

Webster's New Int'l Dictionary 1269 (2d ed. 1945) ..............................................22

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee Vivid Seats Ltd. provides as follows:

1.      There have been no previous appeals in this case.

2.      Resolution of the issues presented by this appeal may be affected should this Court grant rehearing en banc in Akamai Technologies, Inc. v. Limelight Networks, Inc., Nos. 2009-1372, -1380, -1416, -1417 (Pet. for Rehearing En Banc filed June 12, 2015), and revisit the question presented notwithstanding Akamai's failure to preserve its challenge to Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318 (Fed. Cir. 2008), in the district court.

# INTRODUCTION

Plaintiff-Appellee Robert Mankes' ("Mankes") appeal suffers from fatal procedural and substantive defects. First, Mankes failed to allege a plausible claim for direct infringement of U.S. Patent No. 6,477,503 ("the '503 Patent") in his Amended Complaint. Instead, he alleged only claims of indirect infringement. Rather than further amend his complaint and plead a claim for direct infringement—even one based on the errant joint-infringement theory he argues on appeal—Mankes unveiled his claim of direct infringement only in response to Vivid Seats Ltd.'s ("Vivid Seats") Motion for Judgment on the Pleadings. This failure in pleading dooms his appeal at the threshold, as a party may not argue a theory on appeal never pleaded in his complaint.

Second, binding precedent of this Court and the Supreme Court of the United States foreclose Mankes' present attempt to claim direct infringement. Mankes attempts to bypass this obstacle by asking the Court to jettison its precedent and expand the scope of 35 U.S.C. § 271(a) to encompass a new theory of "joint" direct infringement. This Court, however, may not simply cast aside its precedent. Only an *en banc* ruling from this Court or an intervening decision by the Supreme Court may overrule binding precedent.

Lastly, Mankes offers no compelling legal or policy arguments to warrant this Court's reconsideration of its precedent. This Court's prior decisions are

consistent with the Patent Act and accurately reflect the text and structure of § 271. Through § 271(b) and (c), Congress chose to enact specific common law joint tortfeasor principles that proscribe collective infringement by way of inducement and contributory infringement. A reading of the statute that imputes these same principles to § 271(a) would render § 271(b) and (c) superfluous. Moreover, Mankes' reading would substantially undermine the statutory scheme for limiting secondary liability by supplanting the knowledge and materiality safeguards of § 271(b) and (c) with a sweeping strict liability standard. Exposing unsuspecting down-stream consumers to strict liability will invariably open the door to a wave of predatory lawsuits that will stifle legitimate commerce and productive enterprise. For any one of these reasons, this Court should not disturb the district court's judgment.

## STATEMENT OF THE ISSUES

1.     Before the district court, Mankes pleaded no claim of direct infringement under 35 U.S.C. § 271(a), and alleged only claims of indirect infringement by inducement or contributory infringement. In response to Vivid Seats' dispositive motion, Mankes recast his claims to include direct infringement based on collective action. By failing to properly plead a claim of direct infringement under § 271(a) in his Amended Complaint, has Mankes waived on appeal any claim of direct infringement?

**2.**    This Court in *Muniauction*, *Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) ruled that direct infringement under § 271(a) occurs only when a single party performs or uses each and every step or element of a claimed method. It reaffirmed this rule in *Akamai Technologies*, *Inc. v. Limelight Networks*, *Inc.*, 786 F.3d 899 (Fed. Cir. 2015) ("*Akamai II*"). No intervening *en banc* ruling of this Court or the Supreme Court of the United States has expressly or by necessary implication overruled or called into doubt the validity of *Muniauction*. Did the district court correctly follow the ruling of *Muniauction* and *Akamai II* by granting judgment on the pleadings in favor of Vivid Seats given that the Amended Complaint conceded Vivid Seats does not perform each step of the claimed method?

**3.**    *Muniauction* and *Akamai II* are based on a construction of § 271 that gives effect to each of its provisions and comports with common law principles governing claims based on "concert of action" and other fault-based tort doctrines. Should this Court overturn *Muniauction* and *Akamai II* in favor of the reading advocated by Mankes, which contravenes the text and structure of § 271 and well-established principles of tort law?

## STATEMENT OF THE CASE

Mankes sued Vivid Seats on October 14, 2013, for infringement of the '503 Patent. (App. 51.) Mankes alleged that Vivid Seats "uses and operates an internet-

3

based reservation system for reserving, buying, and selling tickets," (App. 53), to a variety of live shows and events that directly and/or indirectly infringes "one or more claims of the '503 Patent," (App. 52–53). He acknowledged, however, that Vivid Seats' reservation system only performs "some [but not all] of the steps of the claims invention." (App. 53.)

On February 28, 2014, Mankes filed his Amended Complaint (the "Amended Complaint"). (App. 61.) Notably, the Amended Complaint failed to state whether Mankes was proceeding under a theory of direct or indirect infringement, failed to allege that Vivid Seats exercised direction or control over its users, and failed to make any allegation that Vivid Seats sold a product or service specifically adapted to infringe the '503 Patent. (*See* App. 61–65.) Because it was unclear from the Amended Complaint whether Mankes was proceeding under a theory of direct or indirect infringement, or both, Vivid Seats asked Mankes' counsel for clarification. (App. 126.) By e-mail, Mankes' counsel confirmed that "[i]n the Amended Complaint, there is not an allegation of direct infringement." (App. 125.) Instead, "the theory at issue in the case is one of indirect infringement." (*Id*.)

While the case between Mankes and Vivid Seats was before the district court, the Supreme Court accepted certiorari in *Limelight Networks*, *Inc. v. Akamai Technologies*, *Inc*., ___ U.S. ___, 134 S. Ct. 2111 (2014) ("*Akamai I*"), a case

4

presenting similar issues. In *Akamai I*, Petitioner presented the following question: "Whether the Federal Circuit erred in holding that a defendant may be held liable for inducing patent infringement under 35 U.S.C. § 271(b) even though no one has committed direct infringement under § 271(a)." *Id*. at 2120. Respondent filed a conditional cross-petition, seeking to challenge *Muniauction* by raising the question "[w]hether a party may be liable for infringement under either . . . § 271(a) or § 271(b) where two or more entities join together to perform all of the steps of a process claim." Conditional Cross-Pet., *Akamai I*, 2013 WL 417691 (U.S. filed Feb. 1, 2013). In light of the *Akamai I* proceedings before the Supreme Court, on April 11, 2014 the parties submitted a joint motion to stay the case, pending the Supreme Court's ruling. (App. 107.)[1] The district court granted the stay. (App. 111.)

The Supreme Court on June 2, 2014, issued a narrow ruling in *Akamai I* that a "defendant may [not] be liable for inducing infringement of a patent under § 271(b) when no one has directly infringed the patent under § 271(a) or any other statutory provision." *Akamai I*, 134 S. Ct. at 2115. The Court made clear it would not review this Court's interpretation of § 271(a) in *Muniauction*. *See Akamai I*, 134 S. Ct. at 2117, 2119, 2120. Yet, based on the assumption that *Muniauction* was

---

[1] In the Motion to Stay, the parties stipulated, "If the Supreme Court holds that to establish inducement of infringement requires that a single actor perform all the steps of a method claim, the inducement claims plead against [Vivid Seats] would not meet that standard." (App. 108.)

correct, the Court found: "[T]here has simply been no infringement of the method in which respondents have staked out an interest, because the performance of all the patent's steps is not attributable to any one person." *Id*. at 2117. "Because Limelight did not undertake all [the] steps of the '703 patent and cannot otherwise be held responsible for all those steps, respondents' rights have not been violated." *Id*. at 2119. In light of its ruling, the Court denied Akamai's cross-petition. *See Akamai Techs*., *Inc*. *v*. *Limelight Networks*, *Inc*., 134 S. Ct. 2723 (2014). The Supreme Court remanded the case to this Court to provide it an "opportunity to revisit the § 271(a) question if it so chooses." *Akamai I*, 134 S. Ct. at 2120.

Following the Supreme Court's ruling in *Akamai I*, and in light of the continued validity of *Muniauction*, Vivid Seats filed its Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). (App. 117.) In the Motion, Vivid Seats argued that Mankes pleaded only claims for indirect infringement and failed to plead any claim of direct infringement by a single party as required by *Muniauction*. (App. 122–24.) The district court agreed and entered an order on February 26, 2015, dismissing Mankes' Amended Complaint. (App. 1.) This appeal followed.

Meanwhile, this Court on remand considered the question left open by the Supreme Court in *Akamai I*, and reaffirmed the rule of *Muniauction* that § 271(a) does not incorporate a theory of direct infringement based on joint-tortfeasor

liability. "For method patent claims, direct infringement only occurs when a single party or a joint enterprise performs all of the steps of the process." *Akamai II*, 786 F.3d at 904.

## SUMMARY OF THE ARGUMENT

1.  This Court should not consider Mankes' appeal because he did not plead a claim of direct infringement in his Amended Complaint. He instead asserted only claims for indirect infringement; that is, claims based on the doctrines of inducement and contributory infringement. In his response in opposition to Vivid Seats' Motion for Judgment on the Pleadings, Mankes changed course and argued that Vivid Seats could be held liable on a theory of direct infringement under § 271(a), even though, allegedly, multiple parties collectively performed the steps of the claimed method. He echoes this joint direct infringement argument on appeal. Because Mankes did not plead direct infringement in his Amended Complaint, however, he may not argue such a theory on appeal. *See*, *e.g.*, *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) (explaining that courts refuse to consider theories raised in response to dispositive motions but never pleaded).

2.  This Court in *Akamai II* and *Muniauction* ruled that to establish liability for induced infringement of a method claim—Mankes' sole theory of liability in this case—a plaintiff must prove that a single entity carried out every

step of the claimed method. These cases remain binding precedent until they are overturned by the Supreme Court or by this Court *en banc*. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1355 (Fed. Cir. 2011). As these cases continue to control, the panel considering this appeal is compelled to follow their reasoning.

**3.**    This Court should reject any argument that *Akamai II* and *Muniauction* were wrongly decided. Instead, the decisions in *Akamai II* and *Muniauction* accurately reflect the statutory scheme of § 271. Section 271(a) establishes a strict liability regime for direct patent infringement and identifies the acts that constitute the tort. Its plain text requires a plaintiff to prove a single entity used the complete "patented invention" before there is liability. The only basis for attribution of third parties' conduct to a defendant to establish strict-liability under § 271(a) is vicarious liability. Liability for conduct other than direct infringement is governed not by § 271(a), but by § 271(b) and (c); to invent a new parallel category of infringement—based on concert of action or other fault-based tort doctrines—would conflict with the statute and essentially render § 271(b) and (c) meaningless. What is more, to rewrite § 271(a) so that any actor who performs a step of a patent claim can be held liable for infringement will lead to extraordinary and illogical results. Depending on how a claim is drafted, any downstream user of a technology—such as a user of a content delivery network who tags his content or

8

even a patient who initiates an online communication with his doctor—could find himself strictly liable for patent infringement.

## STANDARD OF REVIEW

The Court applies the procedural law of the regional circuit—here the Fourth Circuit—when reviewing a district court's grant of a motion for judgment on the pleadings. *Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.*, 482 F.3d 1317, 1320 (Fed. Cir. 2007). In the Fourth Circuit, Rule 12(c) motions testing the sufficiency of a complaint are reviewed *de novo*. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751 (4th Cir. 2012)).

When evaluating a motion for judgment on the pleadings, a court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences from those facts in the plaintiff's favor.[2] *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014). Nevertheless, the Court is not obliged to accept allegations that "represent unwarranted inferences, unreasonable conclusions, or arguments," or that "contradict matters properly subject to judicial notice or by

---

[2] On brief, Mankes alleges numerous facts regarding his avocation as a golfer and his inspiration to develop his patented method. However, none of these facts appear in Mankes' First Amended Complaint and may not be considered on appeal. *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) ("Our review is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits.").

exhibit." *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006) (internal quotation marks omitted). A motion for judgment on the pleadings must be granted where it appears from the complaint that the plaintiff can prove no set of facts to establish an entitlement to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## ARGUMENT

### I.     Mankes Failed to Preserve Any Claim for Direct Infringement Under § 271(a).

It is established law that a party may not use his or her opposition to a dispositive motion as a means to unveil a new legal theory. *E.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (*per curiam*) ("A plaintiff may not amend [his or her] complaint through argument in a brief opposing summary judgment."). Rather, the proper procedure for alleging a new theory in a civil action is to amend the complaint under Federal Rule of Civil Procedure 15(a). *GeorgiaCarry.Org*, 687 F.3d at 1258 n.27 (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006)); *see also Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (noting that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). By failing to follow the appropriate procedures for amending the complaint, a party forfeits his new theory on appeal. *See Monticello*

*Sch. Dist. No. 25 v. George L.*, *on Behalf of Brock L.*, 102 F.3d 895, 903 (7th Cir. 1996) ("[P]arties are bound by the allegations set forth in their complaint, and this Court will not explore a new theory of liability on appeal.").

Mankes alleged in his Amended Complaint only theories of indirect infringement. (*See* App. 61–67, 125.) He stated no claim for direct infringement, either based on individual or joint action. In fact, Mankes admitted that "[i]n the Amended Complaint, there is not an allegation of direct infringement." (App. 125.) At most, he made nonspecific allegations based on "information and belief" that Vivid Seats sold its reservation system to unknown ticket sellers who practiced unspecified elements of the claimed method. (*See* App. 63.) These unadorned statements lack the specificity required to put a party on notice of a claim for direct infringement. "The plaintiff must, at the very least, 'in all cases give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1347 (Fed. Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Notwithstanding his contrary representation, Mankes argued in opposition to Vivid Seats' Motion for Judgment on the Pleadings that Vivid Seats was liable for direct infringement under § 271(a) based on the concerted actions of it and its Sellers. Mankes never amended his First Amended Complaint to reflect this theory

of recovery, and continues to argue direct infringement under § 271(a) on appeal. (Br. of Appellant at 5–24.)

Based on well-settled law, however, Mankes' failure to adequately plead a claim for relief based on direct infringement—even one predicated on concert of action—bars him from asserting any claim for recovery under § 271(a) on appeal. *See GeorgiaCarry.Org*, 687 F.3d at 1258 n.27; *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 n.16 (4th Cir. 2008).

## II.    Mandatory Precedent of this Circuit Makes Clear that § 271(a) Does Not Reach Claims of Joint Infringement.

Notwithstanding well-reasoned and binding case law holding that § 271(a) does not reach claims of direct infringement based on common law joint-tortfeasor theories, Mankes argues this Court should incorporate these theories into § 271(a) and overrule *Akamai II* and *Muniauction*. This Court, however, may not simply ignore its obligation to follow and apply binding precedent. Indeed, the reasoning articulated by this Court in *Akamai II* and *Muniauction* is soundly grounded in the text of § 271(a) and holdings of the Supreme Court. Mankes fails to cite to any decision of the Supreme Court or this Court sitting *en banc* calling such holdings into question.

**A.    The "Single Entity" Rule As Explained By *Akamai II* and *Muniauction* Is Grounded in the Text of § 271(a) and Supreme Court Doctrine and Requires Dismissal of Mankes' Claims.**

Patent infringement is a tort created and defined by statute. *See Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40 (1923) ("The monopoly [granted to the patentee] did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated by the rules of the common law."). Section 271(a) identifies the acts that constitute direct infringement and its plain text requires a single entity to use the complete "patented invention" before there is liability. *See* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent."). The Supreme Court has stated repeatedly that direct infringement under § 271(a) requires *all elements* of a claimed invention to be used: "If anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U. S. 336, 349 (1961); *see also Deepsouth Packing Co. v. Laitram Corp.*, 406 U. S. 518, 528 (1972) ("[W]e have so often held that a combination patent protects only against the operable assembly of the whole and not the manufacture of its parts."). As understood by the Supreme Court, the text of § 271(a) is clear: strict liability is triggered only by

whoever "makes, uses, offers to sell, or sells" the "patented invention," not some fraction of it. *Id.*

From the text of § 271(a) and Supreme Court precedent derives the conclusion that for method patent claims, direct infringement occurs only where a single party performs each and every step of the process. *Akamai I*, 134 S. Ct. at 2117; *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is directly infringed only by one practicing the patented method." (emphasis omitted)); *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1568 (Fed. Cir. 1983) ("Because the [method] claims include the application of a diazo coating or other light sensitive layer and because Advance's customers, not Advance, applied the diazo coating, Advance cannot be liable for direct infringement with respect to those plates . . . ."). Consistent with these principles, a party that performs some but not all steps in a claimed method might otherwise be held liable through principles of vicarious liability where there is direction or control. *See Akamai II*, 786 F.3d at 908–09.

Tort law draws a sharp distinction between attribution of conduct based on vicarious liability and doctrines that extend tort liability for another's conduct based on fault. "Pure vicarious liability" is "based on the actions of the other party regardless of any allegation of culpability on the party held vicariously liable." *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 722 (11th Cir. 2008) (*per*

14

*curiam*). Vicarious liability arises only where the defendant has the legal right to direct or control the conduct of the third party. *Meyer v. Holley*, 537 U.S. 280, 286 (2003) ("The Restatement § 1 specifies that the relevant principal/agency relationship demands . . . [*inter alia*] control (or the right to direct or control)"). Such direction or control can be found to establish a "divided" infringement claim "in a principal-agent relationship, a contractual relationship[,] or in circumstances in which parties work together in a joint enterprise functioning as a form of mutual agency." *Akamai II*, 786 F.3d at 905. This Court has summed up the controlling standard, the so-called "single entity" rule, as follows: "Where the action of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" *Muniauction*, 532 F.3d at 1329 (quoting *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380–81 (Fed. Cir. 2007)).

Mankes acknowledged in his Amended Complaint that no single entity performed each step of the claimed method. (App. 64 ("Vivid Seats's (*sic*) reservation system performs *some of the steps* of the claimed invention." (emphasis added)); *id*. ("the Sellers perform[] these other steps of the claimed invention")). Critically, Mankes also omitted any claim that Vivid Seats directs or controls its Sellers, or that the Sellers act in an agency relationship with Vivid Seats, act

15

pursuant to a contractual obligation, or are otherwise obligated in any way to perform any step of the claimed method.[3] *See*, *e.g.*, *Akamai II*, 786 F.3d at 905. Straightforward application of this Court's precedent therefore requires this Court to affirm the district court.

### B.   No Intervening Decision of this Court Sitting *En Banc* or the Supreme Court Has Called This Court's Rulings in *Akamai II* and *Muniauction* into Question.

On brief, Mankes essentially acknowledges he cannot plead a claim sufficient to satisfy the single-entity rule. Undaunted, he argues this Court "should interpret [§ 271(a)] to find infringement where the steps of a claimed invention are each performed by the acts of multiple parties, without the requirement that the parties had a principal-agent relationship, contractual relationship, or were involved in a joint enterprise." (Br. of Appellant at 5.)

As noted *supra* II.A, this Court has clearly articulated the single entity rule on multiple occasions and explained that it accords with the text, structure, and purpose of § 271. *See*, *e.g.*, *Akamai II*, 786 F.3d at 904; *Muniauction*, 532 F.3d at 1329. The Supreme Court left the rule wholly intact in *Akamai I*. 134 S. Ct. at 2120. This is decisive. A panel of this Court is compelled to follow a decision of an earlier panel unless it has been called into doubt by an intervening Supreme

---

[3] The reason for Mankes' failure to include these critical allegations is simple: no such relationship exists. Vivid Seats and its Sellers and Buyers operate independently within a defined marketplace.

Court decision or by one of this Court sitting *en banc*, *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006), or "unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court, or this court *en banc*," *In re Sokolowski*, 205 F.3d 532, 535 (2d Cir. 2000). *See also Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 424 (1986) (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting)) (stating that for statutory determinations, "it is more important that the applicable rule of law be settled than that it be settled right . . . . This is commonly true, even where the error is a matter of serious concern, provided correction can be had by legislation." (internal quotation marks omitted)).

Mankes attempts to claim that the Supreme Court called *Muniauction* into question by claiming the Court in *Akamai I* "expressed misgivings" about the rule and "appeared sympathetic to the argument that the current standard for multi-party infringement under § 271(a) is incorrect." (Br. of Appellant at 12.) He struggles to find support for his claims in isolated statements made by justices at oral argument and a passage from the Court's opinion in *Akamai I*. (*Id.*) But the questions and commentary of judges or justices at oral argument are purely part of the deliberative process and have no impact on the state of the law. *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. 12-cv-1540, 2014 WL 5393867, at *4

(S.D.N.Y. Oct. 23, 2014); *Rangel v. United States*, 155 F. Supp. 2d 949, 954 (N.D. Ill. 2001).

Plus, *Akamai I*'s dicta that the Court "acknowledge[s]" the concern that its interpretation of § 271(b), and adherence to *Muniauction*, creates the anomaly that a would-be-infringer can "evade liability by dividing performance of a method patent's steps" does not mean that the Court is dubious of the single-entity rule. *Akamai I*, 134 S. Ct. at 2120. To the contrary, it is as likely that in leaving *Muniauction* intact, the Court deemed the rule articulated in the case a correct rule based on the text and structure of § 271. In fact, the Court was emphatic that *Muniauction* controlled, stating, on the assumption that *Muniauction* was correct, "there has simply been no infringement of the method in which respondents have staked out an interest, because the performance of all the patent's steps is not attributable to any one person." *Id.* at 2117.

The single-entity rule as expressed in *Muniauction* and reaffirmed in *Akamai II* controls the outcome of this appeal and compels this Court to affirm the district court's dismissal of Mankes' claims.

## III.    The Single-Entity Rule Articulated By *Muniauction* and *Akamai II* Is Correct.

At bottom, Mankes asks this Court to overturn *Muniauction* and *Akamai II*, and their restrictions on proving divided infringement. He advocates instead for this Court to rewrite § 271(a) to incorporate boundless direct infringement theories

based merely on collective action. His arguments, however, find no statutory support and are contrary to the broader policy interests that form the foundation of the patent laws.

### A. Allowing Joint-Tortfeasor Based Liability Is Inconsistent With the Statutory Framework for Patent Infringement.

Mankes' argument that this Court should import joint-tortfeasor principles to § 271(a) has no statutory basis. Reading direct joint liability theories into § 271(a) would undermine the statutory scheme as such theories disregard and override the safeguards established in § 271(b) and (c), which regulate infringement claims against actors that do not perform all steps of a patented invention.

Where, as here, Congress has created a statutory scheme regulating private liability, a court should not create overlapping common-law tort theories. In fact, the Supreme Court has rejected attempts by courts to superimpose common-law theories on a statutory scheme. For instance, in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, the Supreme Court stated that "[t]he fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere." 511 U.S. 164, 184 (1994); *id.* at 182 ("[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors."); *see also Janus Capital Grp.,*

19

*Inc. v. First Derivative Traders*, ___ U.S. ___, 131 S. Ct. 2296, 2302 (2011) (cautioning that where Congress distinguishes between primary and secondary liability in a statute, a broad reading of the primary liability provisions "would substantially undermine" the statutory scheme).

The reasoning of *Central Bank of Denver* is an important lodestar for resolution of this issue; especially given the history of § 271(b) and (c). Congress enacted § 271(b) and (c) in 1952 to codify common law joint-tortfeasor principles of inducement and contributory infringement. Giles Rich, *Infringement Under Section 271 Of The Patent Act Of 1952*, 35 J. Pat. Off. Soc'y 476, 480 (1953) ("Contributory infringement is an expression of the old common law doctrine of joint tort feasors"). As reiterated in *Global-Tech Appliances*, *Inc. v. SEB S.A.*, "[b]efore 1952, both the conduct now covered by §271(b) (induced infringement) and the conduct now addressed by §271(c) (sale of a component of a patented invention) were viewed as falling within the overarching concept of 'contributory infringement.'" 131 S. Ct. 2060, 2066 (2011).

Indeed, the entire point of § 271(b) and (c) was to crystallize the murky common law of joint-tortfeasor liability as applied to patent law. *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 203–04 (1980) (stating that § 271(b) and (c) "were intended to codify in statutory form the principles of contributory infringement and at the same time [to] eliminate . . . doubt and confusion that had

20

resulted from decisions of the courts in recent years.") (internal quotations omitted). Congress' deliberate choice to address the pre-1952 overarching concept of contributory infringement in § 271(b) and (c) means that courts must apply those provisions as written—not generalized, common law joint-tortfeasor concepts.

Where Congress deliberately chose to impose joint-tortfeasor liability in § 271(b) or (c) alone, it would be improper for this Court to now reinterpret 271(a) to effectively override the existing statutory scheme. *Id*.

### B.  Incorporating Joint-Tortfeasor Concepts Into § 271(a) Will Render § 271(b) and (c) Superfluous.

Despite his claims to the contrary, (Br. of Appellant at 10–11), Mankes' reading of § 271 is at odds with one of the most basic interpretive canons, that "'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

"Section 271(a) defines infringement," while subsections (b) and (c) "codify the doctrines of inducement and contributory infringement respectively." *Akamai II*, 785 F.3d at 906. Specifically, § 271(b) provides: "Whoever actively induces infringement of a patent shall be liable as an infringer." In *Global–Tech*, the Supreme Court explained that to induce "means to 'lead on; to influence; to prevail

21

on; to move by persuasion or influence.'" 131 S. Ct. at 2065 (quoting Webster's New Int'l Dictionary 1269 (2d ed. 1945)) (internal citations and brackets omitted). The *Global–Tech* Court further explained that the adverb "actively" means that "the inducement must involve the taking of affirmative steps to bring about the desired result." *Id*. This "obviously [requires] know[ing] the action that [the inducer] wishes to bring about." *Id*. Hence, "a party actively induces patent infringement under § 271(b) if she causes infringement while intending the act or result to occur (along with certain other requirements)." *Akamai II*, 786 F.3d at 907–08 (quotation marks and citation omitted).

Under § 271(c), a party who "offers to sell or sells" a patented invention or process, or material part thereof, with actual knowledge, or willful blindness, of the existence of the patent "shall be liable as a contributory infringer." Thus, § 271(c) requires a mental state of knowledge or willful blindness of the patent, *Global–Tech*, 131 S.Ct. at 2068, and direct infringement, *Aro Mfg*., 377 U.S. at 484. Like § 271(b), § 271(c) entails *causing* customers to act as they did and *intending* the acts and/or their results.

Unlike indirect infringement under § 271(b) and (c), which both require intentional wrongdoing, direct infringement under § 271(a) is a strict liability tort. *Global–Tech*, 131 S. Ct. at 2065 n.2 ("Direct infringement has long been

understood to require no more than the unauthorized use of a patented invention . . . . [A] direct infringer's knowledge or intent is irrelevant.").

Reading § 271(a) to allow the individual, non-infringing acts of unrelated parties to add up to infringement would render both § 271(b) and (c) meaningless. *See Akamai I*, 786 F.3d at 907. A party need only advance a theory of direct joint infringement, and would have no need to bring a claim of inducement or contributory infringement. A plaintiff would merely have to prove that someone performed one of many steps of a method, and that someone else performed another step. Most importantly, the statutory mental state limitations on inducement and contributory infringement engrafted onto subsections (b) and (c) would be swallowed completely by a new strict liability tort of joint-infringement.

To avoid this result, Mankes proposes an approach that would require each joint infringer to perform at least one step of the claimed method. (Br. for Appellant at 10–11.) Under this approach, according to Mankes, § 271(b) would be necessary to protect against situations in which one induces another to infringe, but itself performs none of the claimed steps. *Id*. This approach is no solution at all for it requires "a new and untested definition of the word 'uses'"—*i.e.* one in which "use" encompasses performance of only part, not all, of a claimed method. *Akamai II*, 786 F.3d at 908. This is entirely inconsistent with accepted interpretations of what it means to "use" a method patent. *See Akamai I*, 134 S. Ct. at 2117 ("A

method patent . . . is not infringed unless all the steps are carried out."). And the approach conflicts with common law tort principles—the very body of law Mankes cites to justify his expansive definition of § 271(a). Under the common law, where there is intent to aid another in committing the tort, liability will attach regardless of whether the aider performs an element of the tort himself. *See* Restatement (Second) of Torts § 876(b), (c) (1979).

### C. Important Common Law Safeguards to Joint-Tortfeasor Liability Cannot Operate Within § 271(a).

Direct infringement under § 271(a) and joint tortfeasor law are "fundamentally incompatible." *Akamai II*, 786 F.3d at 911. While Mankes tries to craft a limited approach measured by degree of fault and apportionment of damages, (*see* Br. of Appellant at 15–16), his attempts prove unworkable as they fail to appreciate that direct infringement under § 271(a) is a strict liability tort. Indeed, collective action and other fault-based tort theories cannot operate intact within a strict liability regime, such as the one established by § 271(a). To impose joint-tortfeasor liability under § 271(a), this Court would have to craft novel theories of joint-liability that disregard "three indispensable common law limits": personal guilt of the defendant; "mutual agency"; and knowledge of the alleged harm. *Akamai II*, 786 F.3d at 911.

24

1.     **At common law, innocent actors who coordinate to cause harm are not subject to liability.**

A critical component of joint liability is tortious conduct by *the defendant*. *See* Restatement (Second) of Torts § 875 cmt. a (1979) ("the [contributing tortfeasors] rule . . . includes only situations in which the defendant *has been personally guilty of tortious conduct*." (emphasis added)); *id*. § 876 cmt. c ("it is essential that the conduct of the [defendant] be *in itself* tortious" (emphasis added)). Under the common law, absent such conduct, there can be no liability.

A method patent is infringed only when every step is performed. *Akamai II*, 786 F.3d at 904. It follows that performing less than every step of a claimed method is not infringement. Indeed, it is well-settled that "designing around" patents (*e.g.*, achieving similar results without practicing each and every step of a patented method) is not only permissible, it is "encouraged as a path to spur further innovation." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2014). The Restatement supports this reasoning by making plain that no liability exists where one "innocently, rightfully and carefully does an act" that happens to coordinate with another to cause harm. Restatement (Second) of Torts § 876 cmt. c (1979); *accord Akamai II*, 786 F.3d at 911 ("[A]ctors whose innocent actions coordinate to cause harm generally are not subject to liability at common law"). "Careful" performance of less than every step of a method claim is "rightful and innocent."

25

Accordingly, the requisite tortious conduct would be absent. *Akamai II*, 786 F.3d at 911.

### 2. Under the common law, no liability can attach in the absence of a mutual agreement.

Joint-tortfeasor liability traditionally exists only where the defendant "act[s] in concert" with another. Restatement (Second) of Torts § 876 (1979). Acting in concert requires "an agreement to cooperate in a particular line of conduct or to accomplish a particular result." *Id*. § 876 cmt. a. Appropriately, the comments to the Restatement liken this requisite "agreement to cooperate" to "mutual agency." *Id*. To reach a level of "mutual agency" in the patent infringement context would require "complicity" or "mutual cooperation" in the infringement. *Akamai II*, 786 F.3d at 911 (recognizing the rule's consistency with early patent law treatises requiring "complicity with others" or "'cooperat[ing]' in infringement" for liability to attach). Contrarily, when parties act independently without any kind of direction or control of one by the other—like Vivid Seats and its Sellers here—there is no mutual agency and joint-tortfeasor principles do not apply. *Id*. ("There is no mutual agency or cooperation when parties act independently for their own benefit, such as in arms-length seller-customer relationships.").

### 3. No liability can attach in the absence of knowledge of harm.

Inserting joint tortfeasor liability into § 271(a) would require this Court to

either impose a knowledge requirement into the statute, in contravention of Congress's choice to omit one, or shear the knowledge requirement from the common law theory of joint liability. *Compare* 35 U.S.C. § 271(a) (strict liability), *with* Restatement (Second) of Torts § 876 (1979) (defining persons acting in concert as those acting with a "common design," or where one "*knows* that the other's conduct constitutes a breach of duty" (emphasis added)), *and Akamai II*, 786 F.3d at 912 (discussing the common law joint-tortfeasor knowledge of harm requirement). The statute supports neither solution. Congress enacted § 271(b) and (c) as the exclusive joint infringement provisions,[4] and, consistent with tort law, included traditional knowledge requirements. *Global-Tech*, 131 S. Ct. at 2068 (requiring "knowledge [or willful blindness] of the existence of the patent" in order to find liability under § 271(b) and (c)). To now import a knowledge requirement on § 271(a) "would be contrary to centuries of settled Supreme Court precedent that a direct infringer's knowledge or intent is irrelevant." *Akamai II*, 786 F.3d at 912 (quoting *Global-Tech*, 131 S. Ct. at 2065 n.2) (internal quotations omitted).

Likewise, this Court is not free to modify common-law doctrine and establish an unprecedented collective infringement theory under which all parties

---

[4] *See, e.g.*, Contributory Infringement in Patents—Definition of Invention: Hearings on H.R. 5988, 4061, and 5248 Before the Subcomm. on Patents, Trademarks, and Copyrights of the H. Comm. on the Judiciary, 80th Cong. 12 (1948) (statement of Giles S. Rich on behalf of the New York Patent Law Ass'n) ("contributory infringement [under § 271(b) and (c)] is a specific application to patent law of the law of joint tortfeasor").

27

who perform part of a method are held strictly liable. When Congress creates a tort action it does so against a background of common-law principles. *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 108 (1991). And there exists "a presumption favoring the retention of [these] long-established and familiar principles, except when a statutory purpose to the contrary is evident." *United States v. Texas*, 507 U.S. 529, 534 (1993). Nothing in the statute's text or structure makes evident that Congress enacted in § 271(a) a modified common law approach under which joint-tortfeasors are held strictly liable for infringement. Just the opposite, the enactment of § 271(b) and (c) makes evident that Congress removed joint-tortfeasor liability entirely from the scope of § 271(a).

### D. Mankes' Reading of the Term "Whoever" Does Not Support His Interpretation of § 271(a).

Mankes also claims that the word "whoever" in § 271(a) ("whoever . . . uses . . . any patented invention") undermines the single entity rule because the term includes multiple parties. (Br. of Appellant at 7 (citing 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things . . . .")).) But the term simply states the obvious: more than one entity can be independently liable for direct patent infringement if each entity practices every element of the claim. Additionally, the statutory context—with §

271(b) and (c) extending liability in limited circumstances to actors who do not independently infringe—establishes that § 271(a) excludes joint liability.

### E.    Expanding § 271(a) to Reach Joint Action Will Restrain Innovation and Productive Enterprise.

Mankes' request for this Court to rewrite patent law so that any actor who performs a step of a patent claim can be held liable for infringement—even if the rest of the steps are performed by others—if granted will have the effect of trenching on legitimate commerce and development. Depending on how a claim is drafted, any downstream user of a technology could find himself liable for infringement. Such a change in the law would cause serious harm to those unsuspecting parties and do nothing to further the fundamental goal of the patent system: spurring innovation. *See* Siddharth Khanijou, *Patent Inequity?*: *Rethinking the Application of Strict Liability to Patent Law in the Nanotechnology Era*, 12 J. Tech. L. & Pol'y 179, 195 (2007) ("The goal of increasing inventive activity is not furthered by making an innocent possessor who derives no benefit from the technology, and may in fact suffer harm, liable for infringement.").

Indeed, expanding direct infringement claims would stifle commerce and place further upward pressure on product costs by allowing for opportunistic litigation in which more and more market participants that touch a multi-feature system or network are sued collectively. Likewise, opportunistic plaintiffs would pursue even more companies to seek cost-of-defense style settlements from each.

For instance, with the incentive of plaintiffs to pull multiple parties into litigation, and the power to draft claims to add prior art steps to a method, multi-actor patent claims might be the goal, rather than the drafting error to be avoided. It is not at all difficult to envision dependent claims whose sole purpose is to add prior art steps precisely to increase the patent applicant's litigation and licensing options post-issuance. This would increase the number of parties per case and exacerbate the existing problems attendant to litigation that many technology companies, like Vivid Seats, face today.

The current problem with opportunistic plaintiffs seeking nuisance value settlements from a company's entire supply chain—including distributors, suppliers, customers, end users, and others—would be exacerbated by allowing multi-actor infringement claims based on ill-defined common law tort theories. *See, e.g.*, *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1327–28 (Fed. Cir. 2011) (recognizing the problematic economics of nuisance value settlements and the potential for abuse of the patent system).

In *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, when defining the scope of infringement liability, the Supreme Court made plain it is "mindful of the need to keep from trenching on regular commerce or discouraging the development of technologies with lawful and unlawful potential." 545 U.S. 913, 919 (2005). In light of this admonition, and the dangers posed by expanding direct infringement

liability to actors who collectively perform the steps of a method, this Court should reject Mankes' erroneous construction of § 271(a).

###    F.    Better Claim Drafting Is the Proper Solution, Not Judicial Revision of the Patent Laws.

Principles of vicarious liability sufficiently protect patentees from actors seeking to avoid infringement liability by "contracting out steps of a patented process to another entity." *BMC*, 498 F.3d at 1381 ("It would be unfair indeed for the mastermind in such situations to escape liability."). While this Court has acknowledged this rule can, in some circumstances, "allow parties to enter into arms-length agreements to avoid infringement," broadening the rule is not the answer. *Akamai II*, 786 F.3d at 909 (citing *BMC*, 498 F.3d at 1381 (cautioning that expansion of the rule would "subvert the statutory scheme for indirect infringement")). Instead, any concerns can be addressed through proper claim drafting. Indeed, the claim drafter has been recognized by many as the "least cost avoider of the problem of unenforceable patents due to joint infringement." *Id*.

Unlike most torts, the patentee has not only an opportunity, but an obligation, to define the conduct that will cause it injury. *Id*. ("the patentee specifically defines the boundaries of his or her exclusive rights in the claims appended to the patent"). The claims, therefore, provide notice to the public of what does, and does not, constitute infringement. *Id*. Claims can almost always be drafted in a manner that avoids reliance on divided infringement principles and

requires performance of all steps by a single entity. *Id*. (citing *BMC*, 498 F.3d at 1381); *see also* Mark A. Lemley et al., *Divided Infringement Claims*, AIPLA Q.J. 255, 272–75 (2005). This requirement does not, as Mankes contends, hold the claim drafter prisoner. (Br. for Appellant at 19). To the contrary, patentees have always been tasked with drafting claims in a manner that avoids permissible "design arounds" by competitors. *See State Indus. Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("One of the benefits of a patent system is the so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace."). The obligation to draft claims that make it difficult for others to design around is not new. "It would [] be unwise to overrule decades of precedent in an attempt to enforce poorly-drafted patents." *Akamai II*, 786 F.3d at 909.

## CONCLUSION

For the reasons stated, the judgment of the district court should be affirmed.

Respectfully submitted, this the 3rd day of August, 2015.

**WILLIAMS MULLEN**

**BY:**  */s/ Richard T. Matthews*
Richard T. Matthews
N.C. State Bar No. 32817
301 Fayetteville St., Ste. 1700
Raleigh, NC 27601
Telephone: (919) 981-4000
Facsimile: (919) 981-4300
Email: rmatthews@williamsmullen.com


Joseph R. Pope
200 South 10th Street
Richmond, Virginia 23218
Telephone: (804) 420-6560
Facsimile: (804) 420-6507
Email: jpope@williamsmullen.com

*Attorney for Defendant-Appellee*


## <u>STATEMENT ON ORAL ARGUMENT</u>

The briefs and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on 3rd day of August, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record for Plaintiff-Appellant:

Anthony J. Biller
David E. Bennett
Coats & Bennett, PLLC
1400 Crescent Green, Ste. 300
Cary, NC 27518
abiller@coatsandbennett.com
dbennett@coatsandbennett.com

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the foregoing document will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

**WILLIAMS MULLEN**

**BY:** */s/ Richard T. Matthews*
Richard T. Matthews
NC State Bar No. 32817
301 Fayetteville St., Ste. 1700
Raleigh, NC 27601
Telephone: (919) 981-4000
Email: rmatthews@williamsmullen.com
*Attorneys for Defendant-Appellee*

## **CERTIFICATE OF COMPLIANCE**

Counsel for Defendants-Appellee hereby certifies that:

1. The brief complies with the type-volume limitation of Rule 28.1(e)(2)(A) because exclusive of the exempted portions it contains 7,892 words as counted by the word processing program used to prepare the brief; and

2. The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2007 in a proportionately spaced typeface: Times New Roman, font size 14.

Dated: August 3, 2015                    */s/ Richard T. Matthews*
                                          Richard T. Matthews